JONES DAY
Brian D. Hershman (State Bar No. 168175)
    bhershman@jonesday.com
Rachel M. Clark (State Bar No. 317519)
    rclark@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539

THE COOK LAW FIRM, P.C.
Philip E. Cook (State Bar No. 149067)
    pcook@cooklawfirm.la
Brian J. Wright (State Bar No. 166753)
    bwright@cooklawfirm.la
601 S. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone: +1.213.988.6100
Facsimile: +1.213.988.6099

Attorneys for Plaintiffs
ENTRAVISION COMMUNICATIONS
CORPORATION and HEADWAY SPAIN
DIGITAL TECHNOLOGY SERVICES, S.L.U.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTRAVISION COMMUNICATIONS CORPORATION, a California corporation; and HEADWAY SPAIN DIGITAL TECHNOLOGY SERVICES, S.L.U., a Spanish limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MARTIN GABRIEL KOGAN, an individual; AGUSTIN ECHAVARRIA COLL, an individual; RODRIGO ZABALETA, an individual; HECTOR ROBERTO L'HOPITAL, an individual; FUTURE ENERGY OVERSEAS GROUP, INC., a British Virgin Island company; JAFZER S.A., a Uruguay joint stock company; GILPERY S.A., a Uruguay joint stock company; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No. 2:20-cv-585<br><br>**COMPLAINT FOR:**<br><br>**1.   BREACH OF FIDUCIARY DUTY;**<br><br>**2.   BREACH OF WRITTEN CONTRACT;**<br><br>**3.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**4.   NEGLIGENT MISREPRESENTATION;**<br><br>**5.   UNJUST ENRICHMENT;**<br><br>**6.   EQUITABLE INDEMNITY;**<br><br>**7.   DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Entravision Communications Corporation ("Entravision") and Headway Spain Digital Technology Services, S.L.U. ("Buyer"), for their Complaint against Defendants Martin Gabriel Kogan ("Kogan"), Agustin Echavarria Coll ("Coll"), Rodrigo Zabaleta ("Zabaleta"), Hector Roberto L'hopital ("L'hopital"), Future Energy Overseas Group, Inc., Jafzer, S.A. and Gilpery, S.A. (collectively, "Sellers"), aver and allege as follows:

## INTRODUCTION

1.    This dispute arises between the buyer and sellers of a digital media company based in Buenos Aires, Argentina. In 2017, Entravision (through its subsidiary, Buyer) purchased a group of affiliated companies that principally provide advertising on digital media platforms, operating in over 15 countries including the United States, Argentina, Spain, Mexico and other countries in Latin America ("Headway," the "Headway companies," or the "Headway business").

2.    The Headway companies were sold by Defendant Kogan (who was a founder and Chief Executive Officer), Defendant Coll (who was a founder and co-Chief Executive Officer / Chief Revenue Officer) and Defendant L'hopital (who was Managing Director for North and Central America), together with those companies named as Defendants through which interests in the Headway companies were held.

3.    In addition to the purchase price that Entravision paid to the Sellers at the closing of Buyer's acquisition of Headway, the Sellers had the opportunity to receive additional purchase price for Headway through an earn-out arrangement, based upon Headway's financial performance after the sale.

4.    After selling Headway, Defendants Kogan, Coll and Zabaleta (who was Headway's Chief Financial Officer) (the "Officers") continued in their roles as officers, senior managers and employees of Headway, maintaining autonomy and control over the management and operations of the Headway business.

5.      After the closing of Buyer's acquisition of Headway, Entravision began to discover instances of the Officers' mismanagement, misrepresentations, failure to report complete and accurate information relating to the Headway business, including significant liabilities not timely disclosed, and breaches of their fiduciary obligations to act with the utmost good faith and in the best interests of the Plaintiffs and the Headway companies.

6.      For instance, in January 2019, Entravision discovered significant liabilities that never had previously been reported. That same month, Entravision terminated the employment of Defendant Zabaleta. Thereafter, Entravision discovered additional information about the Officers' mismanagement and the significant harm they had caused, including the discovery of additional, substantial liabilities of the Headway business. Entravision terminated the employment of Defendants Kogan and Coll in June 2019.

7.      Because of the Officers' and other Sellers' misconduct, Entravision has paid to Sellers a portion of the purchase price at the closing, together with earn-out amounts, to which they were never entitled.

8.      Since their termination, Defendants Kogan and Coll have breached their non-compete restrictions, and have made substantial labor claims against Headway based in large part upon the allegation that Headway failed to comply with certain Argentinian labor laws, a failure for which the Officers themselves were directly responsible.

9.      By this Complaint, Plaintiffs seek to recover payments that they made to Sellers for the acquisition of Headway that were not earned; to obtain indemnification from Sellers for liabilities that Plaintiffs have incurred as a result of Sellers' acts and omissions; and to remedy the Officers' breaches of fiduciary duty to act with the utmost good faith and in the best interests of Plaintiffs and the Headway companies, instead of acting in their own self-interest.

**JURISDICTION AND VENUE**

10.    This Court has jurisdiction, pursuant to 28 U.S.C. § 1332, because there is diversity among the parties and the amount in controversy exceeds the sum or value of $75,000.

11.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Further, the Securities Purchase Agreement and Earn-Out Agreement pursuant to which the Headway business was sold each contain a forum-selection clause establishing venue in this District.

**THE PARTIES**

12.    Plaintiff Entravision is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Santa Monica, California. Entravision is a media and technology company based in Santa Monica, California that owns television stations, radio stations and digital media properties that primarily serve Spanish-speaking audiences in the United States and Latin America.

13.    Plaintiff Buyer is a Sociedad Limitada Unipersonal (S.L.U.), a limited liability company, organized and existing under the laws of Spain, with its principal place of business in Barcelona, Spain. Buyer is a holding company that is wholly owned by Entravision, formed in 2017 for the purpose of facilitating Entravision's acquisition of the Headway companies. For all claims relevant to this Complaint, in part because Entravision is the beneficial owner of Buyer, as well as an intended beneficiary of the contracts that Buyer has entered into with Sellers, Entravision has sustained loss and suffered damage.

14.    Defendants (each a Seller) are the former owners of the Headway companies that were acquired by Entravision and include each of the following:

15.    Defendant and Seller / Officer Kogan, who was a founder of Headway and Chief Executive Officer, is an individual who at all times relevant to this

Complaint, on information and belief, has resided in Argentina. Kogan's interest in the sale of Headway was approximately 30%.

16.  Defendant and Seller / Officer Coll, who was a founder of Headway and co-Chief Executive Officer/Chief Revenue Officer, is an individual who at all times relevant to this Complaint, on information and belief, has resided in Argentina. Coll's interest in the sale of Headway was approximately 30%.

17.  Defendant and Seller Zabaleta is an individual who at all times relevant to this Complaint, on information and belief, has resided in Argentina and Spain.

18.  Defendant and Seller L'hopital is an individual who at all times relevant to this Complaint, on information and belief, has resided in Mexico.

19.  Defendant and Seller Future Energy Overseas Group, Inc. is, on information and belief, a company organized and existing under the laws of the British Virgin Islands, with its principal place of business in Argentina.

20.  Defendant and Seller Jafzer S.A. is, on information and belief, a company organized and existing under the laws of Uruguay, with its principal place of business in Mexico.

21.  Defendant and Seller Gilpery S.A. is, on information and belief, a company organized and existing under the laws of Uruguay, with its principal place of business in Mexico.

22.  Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

23.  At all times relevant to this Complaint, each Defendant named herein was and is the duly authorized agent, employee, servant, partner and/or joint

venturer of the other Co-Defendants, acting within the course and scope of said relationship. Further, when acting as a principal, each Defendant approved, consented to, and ratified the acts and conduct of its Co-Defendants.

## BACKGROUND FACTS

24.  In 2017, Entravision (through its subsidiary, Buyer) purchased a group of affiliated companies that principally provide advertising on digital media platforms, operating in more than 15 countries, including the United States, Spain, Argentina, Mexico and other countries in Latin America (*i.e*., "Headway," the "Headway companies," or the "Headway business").

25.  The Headway companies acquired by Entravision are:   Tonsai S.A., an Argentina corporation, Zoudery S.A., a Uruguay corporation, Headway Digital de Mexico SAPI de CV, a Mexico corporation, Headway Digital Costa Rica S.R.L., a Costa Rica limited liability company, Headway Guatemala S.A., a Guatemala corporation, and Headway Digital de Panama S.A., a Panama corporation.

26.  The Headway companies were sold by Defendant Kogan (who was a founder and Chief Executive Officer), Defendant Coll (who was a founder and co-Chief Executive Officer / Chief Revenue Officer) and Defendant L'hopital, together with those companies named as Defendants (*i.e*., Future Energy Overseas Group, Inc., Jafzer S.A. and Gilpery S.A.), through which Kogan, Coll, L'hopital and other individuals held their interests in the Headway companies at the time of the sale (together, the "Sellers").

27.  <u>Purchase Agreement</u>.   On March 2, 2017, Buyer and Sellers executed a Securities Purchase Agreement ("Purchase Agreement") providing for the acquisition of the Headway companies. The Purchase Agreement stated, among other things, that at the closing of the transaction, Buyer "shall purchase from the Sellers, and the Sellers shall sell, transfer, assign, and deliver to the Buyer, all of the Acquired Company Interests, free and clear of any and all Liens."

28.    The Purchase Agreement provides express obligations of the Sellers to provide on a timely basis complete and accurate information to Plaintiffs and not breach their other covenants and representations.

29.    For instance, Section 2.3(d) of the Purchase Agreement requires the Sellers to cooperate with Buyer and "make available to the other party and its representatives all information, records, data and working papers and shall permit access to its facilities and personnel, as may be reasonably required in connection with the preparation and analysis of the Closing Statement and the resolution of any disputes thereunder."

30.    Section 7.2 of the Purchase Agreement requires the Sellers, prior to the Closing, to furnish Buyer "with all such information related to the Acquired Companies as Buyer may from time to time reasonably request."

31.    In Article 5 of the Purchase Agreement the Sellers make numerous representations and warranties that information they provided to Plaintiffs is complete and accurate, including, without limitation: (i) under Section 5.18(a) that financial statements provided by the Sellers are "true, correct and complete copies" of Headway financial statements, (ii) under Section 5.18(b) that the books and records of the Headway companies "are true, correct and complete, and there are no material inaccuracies or discrepancies of any kind contained or reflected therein", and (iii) under Section 5.21 that all "books, records and accounts of the Acquired Companies are true, correct and complete and are maintained in all material respects in accordance with good business practice and all applicable Laws. The minute books and record books of the Acquired Companies previously delivered to the Buyer are true, correct and complete and accurately reflect in all material respects all actions taken by such Acquired Company."

32.    Section 7.7 of the Purchase Agreement requires the Sellers to give "prompt notice" to Buyer "of (a) the occurrence, or failure to occur, of any event the occurrence or failure to occur of which would be likely to cause any of its

representations or warranties contained in this Agreement to be untrue or inaccurate at any time from the date of this Agreement to the Closing Date, (b) any failure on its part to comply with or satisfy any covenant or agreement to be complied with or satisfied by it hereunder".

33.     Section 11.1(a) of the Purchase Agreement requires the Sellers to indemnify Buyer for losses as a result of (among others):  "(i) any inaccuracies in or any breach of any representation or warranty of the Sellers contained in this Agreement when made (including any schedule or exhibit attached hereto); (ii) any breach of any covenant or agreement of the Sellers or the Seller Representative contained in this Agreement (including any schedule or exhibit attached hereto); . . . [and] (iv) any Taxes of the Acquired Companies for any Pre-Closing Tax Period (including any Pre-Closing Straddle Period), or any Taxes of any Person imposed on any of the Acquired Companies which relate to an event or transaction occurring on or before the Closing Date (except for any Tax that arises from any amendment or modification of any Tax Return of the Pre-Closing Tax Period made by the Buyer not consented by the Sellers Representative)."

34.     Section 11.2(c) of the Purchase Agreement requires the Sellers to "cooperate and make available to the other party and its respective representatives all information, records and data…as may be reasonably required in connection with the resolution of" any indemnification matter.

35.     Earn-Out Agreement.  In addition to the purchase price that Entravision paid for Headway at the closing of the acquisition, the Sellers had the opportunity to receive additional purchase price based upon Headway's financial performance after the sale, through an earn-out arrangement. On April 4, 2017, at the time the sale was consummated (*i.e.*, the "Closing"), Buyer and Sellers executed an Earn-Out Agreement.

36.     The Earn-Out Agreement sets forth a mechanism for Buyer to make additional payments to Sellers in the event that Headway achieves certain financial

objectives, based principally on targets for net revenue and EBITDA (*i.e.*, a measure of profit, specifically: Earnings before Interest, Tax, Depreciation and Amortization) for calendar years 2017, 2018 and 2019. Under the Earn-Out Agreement, annual EBITDA targets are generally a percentage of net revenue, called "Realized EBITDA Percentage" (*i.e.*, a measure of profit margin).

37.    <u>Officer Misconduct</u>. Tonsai S.A. ("Tonsai") was the Headway company in Argentina that employed and paid Defendants Kogan and Coll (together, with Zabaleta, the "Officers") their salaries and other benefits. After the Closing, the Officers continued in their roles as senior executives, officers and managers, maintaining autonomy and control over the management and operations of the Headway business, including through their supervision and control of employees that continued to report to them as they had when Defendants Kogan and Coll owned Headway.

38.    The Officers owed a fiduciary duty to Plaintiffs and each of the Headway companies, which obligated them to act with the utmost good faith and to operate the Headway companies lawfully, in the best interests of the companies and without self-dealing.

39.    <u>2017 Earn-Out Payment</u>.  The first earn-out measurement period ended December 31, 2017. Based upon incomplete and inaccurate financial information that the Officers reported to Entravision, it was determined that Sellers had achieved a USD $7 million earn-out payment for 2017, in part as a result of the Headway companies having achieved a "Realized EBITDA Percentage" in excess of the 2017 annual target, which was 15%.

40.    The 2017 earn-out payment was documented in a May 2, 2018 Letter Agreement between Buyer and Sellers. Of the USD $7 million earn-out payment, USD $2.5 million was paid to Sellers, with USD $4.5 million deferred to a later time under the terms of the Purchase Agreement.

41.   <u>Entravision's Discoveries.</u>  In January 2019, while working on preparing its financial statements for calendar year 2018, Entravision experienced difficulties in getting timely, complete and accurate information from the Officers. During this process, Entravision discovered substantial liabilities that had not previously been reported. Following these discoveries, on January 31, 2019, Entravision terminated the employment of Headway's CFO, Defendant Zabaleta.

42.   Following the termination of Defendant Zabaleta's employment, as Entravision continued to prepare and conduct its audit of its financial statements for 2018, Entravision continued to find significant errors, deficiencies and information relating to the Headway business that had not previously been reported to Entravision. On information and belief, Defendants Kogan, Coll and Zabaleta grossly mismanaged their responsibilities as officers and senior managers of Headway and misrepresented and failed to timely disclose complete and accurate information related to the performance of the Headway business.

43.   Discovery of these errors, deficiencies and information delayed completion of Entravision's audit of its consolidated financial statements for the calendar year ended on December 31, 2018, requiring Entravision to file its Annual Report on Form 10-K with the U.S. Securities and Exchange Commission on May 7, 2019, seven weeks after it was due. These delays directly and proximately caused Entravision to incur over $1.5 million in additional, unanticipated direct expenses.

44.   For instance, Plaintiffs learned that Sellers had failed to disclose to Buyer more than $4 million of operating expense liabilities at the Closing, in violation of the Purchase Agreement. As a result, Buyer overpaid Sellers by over $4 million. Sellers confirmed this in an April 12, 2019 Letter Agreement, expressly allowing Buyer to offset $4 million against any payments that Buyer may owe to Sellers.

45.    Further, although unknown to Plaintiffs at the time Buyer entered into the May 2, 2018 Letter Agreement accepting the 2017 Earn-Out Statement, the Headway companies did not actually achieve the Realized EBITDA Percentage goal required in order for Sellers to receive any 2017 earn-out payment. Adjusted, Sellers' earn-out goals for 2017 were not achieved and the Earn-Out Payment for 2017 was not actually earned.

46.    On June 10, 2019, Entravision terminated the employment of Headway's co-CEOs, Defendants Kogan and Coll, due principally to their failure to perform their job duties, failure to properly manage Headway company operations and failure to report complete and accurate information to Buyer.

47.    <u>Seller Indemnity Obligations</u>.  During fiscal year 2016, Headway Mexico incurred certain liabilities for value added taxes ("VAT") to the government of Mexico. Those tax liabilities were not timely paid, although due and payable before the Closing. Further, those overdue tax liabilities were not disclosed by the Sellers to Buyer before the Closing.

48.    Since the Closing, Headway Mexico has incurred substantial penalties as a result of Sellers' failure to timely pay VAT to the government of Mexico. As of July 12, 2019, the VAT liabilities and associated penalties were significant. Under Section 11.1(a) of the Purchase Agreement, Buyer is entitled to full indemnification from Sellers for this liability.

49.    In addition, Plaintiffs were required to pay severance compensation to Defendant Coll as a result of inaccurate information about Coll's employment that Sellers reported to Buyer on Schedule 5.11(d) to the Purchase Agreement. Under Section 11.1(a) of the Purchase Agreement, Buyer is entitled to full indemnification from Sellers for this liability.

50.    <u>Argentina Labor Claims</u>. Since their termination, Defendants Kogan and Coll have made labor claims against Buyer's subsidiary, Tonsai, asserting that they are entitled to substantial statutory severance.

51.    Among those claims is the assertion that Defendants Kogan and Coll each received monthly compensation of $63.49 for parking and $15.87 for mobile phone use that was not reported by Tonsai to Argentinian authorities. As a result, under Argentine law, this "unreported salary" is alleged to give rise to a substantial sum in penalties payable to Defendants Kogan and Coll as a result of Tonsai's failure to report.

52.    In the event that Defendants Kogan and/or Coll recover on any labor claims on grounds that their salary was not properly reported, it is because Defendants Kogan and Coll, as officers and senior management who managed and controlled the operations of Tonsai, failed to perform their own job duties and responsibilities.

53.    <u>Non-Compete Agreements</u>. On April 4, 2017, in connection with the Closing of Buyer's acquisition of the Headway companies from the Sellers, Defendants Kogan and Coll each executed a Non-Competition Agreement. Among other things, they each agreed that trade secrets and other confidential business and professional information of each of the acquired Headway companies had been developed by those companies through substantial expenditure of time, effort and money, and constituted valuable and unique property of the Headway companies.

54.    The Non-Competition Agreements are narrowly tailored, defining the "Business" as the "selling and/or marketing of digital advertising services as intermediaries connecting media buyers and advertisers with data-driven display advertising opportunities, in each case, in the Spanish language or otherwise offered primarily to Hispanic audiences, Hispanic consumers or Hispanic communities."

55.    Defendants Kogan and Coll further agreed that they and each of the acquired Headway companies "has a legitimate business interest that makes it necessary for the protection of the Business that [Kogan and Coll] do[] not compete with Buyer, any of the acquired companies or any of their respective Subsidiaries" from the Closing on April 7, 2017 until June 10, 2020.

56.     After Defendants Kogan and Coll were terminated, in Fall 2019, a company known as Rocket Lab began to compete with Headway for customers in the digital advertising services market. On information and belief, Defendants Kogan and Coll have been substantially involved in the funding, formation and/or operation of Rocket Lab in violation of their Non-Competition Agreements.

57.     For instance, Rocket Lab operates a similar business as the Headway companies—*i.e.*, selling and marketing digital advertising services. Rocket Lab's website has a similar visual appearance to the Headway website. Rocket Lab is located in the same three cities where the Headway companies have their largest presence, and in which the Sellers resided (*i.e.*, Barcelona, Mexico City, and Buenos Aires). Rocket Lab has a number of former Headway employees working for it, including, among others, Defendant Coll's two brothers, who left employment at Headway Mexico around the same time Rocket Lab was started, as well as Defendant Zabaleta. At least one Headway client has terminated its relationship and become a customer of Rocket Lab. And Rocket Lab has yet to identify publicly its primary investors or any of the individuals who hold key management positions, including Chief Executive Officer or Chief Operating Officer.

58.     Summary.  Defendants Kogan, Coll and Zabaleta, in contravention of their fiduciary obligations to Plaintiffs and the Headway companies, engaged in a pattern of mismanagement, self-dealing, misrepresentation and failure to timely disclose complete and accurate information in an effort to increase their personal benefits, compensation and earn-out payments (and/or those of the other Defendants), and at the expense of Plaintiffs and the Headway business.

59.     As a direct and proximate cause of Defendants' acts and omissions, as alleged herein, Plaintiffs have been harmed in an amount to be proven at trial, including without limitation overpayment of purchase price to Sellers in excess of $4 million at the Closing, a further overpayment of purchase price of approximately

$2.5 million for a 2017 earn-out payment, over $1.5 million in amounts for which Defendants are responsible for, as well as any Argentina labor claim paid based upon the Officers' failure to properly report their own compensation, amounts for which Defendants must indemnify Plaintiffs, and over $1.5 million as a result of the Officers' failures to properly, comprehensively and timely provide 2018 accounting information to Entravision.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty against Defendants Kogan, Coll and Zabaleta)

60.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

61.    As was its right, Entravision provided the Officers with considerable autonomy and flexibility to operate and manage the Headway companies, in their judgment, as a stand-alone business unit.

62.    By virtue of their roles as officers and senior managers with Headway, the Officers owed duties of utmost good faith, care, loyalty and candor to Entravision, Buyer and all of the Headway companies, and were obligated to operate the Headway companies lawfully and in the best interests of Entravision, Buyer and the Headway companies.

63.    As alleged above, the Officers breached their fiduciary duties by, among other things, mismanagement, misrepresentations and failing to provide timely, complete and accurate information to Plaintiffs, and engaging in self-dealing and failure to disclose such information to Plaintiffs.

64.    As a direct and proximate result of Defendants' breaches, Plaintiffs suffered damage through monetary losses, overpayments to Sellers, and are exposed to the possibility of labor penalties to be paid to Defendants Kogan and Coll, all in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract against Defendants Sellers)

65.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

66.     As alleged herein, Sellers have breached their obligations under various sections of the Purchase Agreement, including, but not limited to, Sections 2.3(d), 5.18(a), 5.18(b), 5.21, 7.2, 7.7, 11.2(c), and Section 2(d) of the Earn-Out Agreement to cooperate with Entravision and make available all information, records, data and working papers as may be reasonably required in connection with those items), along with the Officers' express obligations to provide complete and accurate information to Plaintiffs, to act in good faith and not breach their other covenants and representations.

67.     In addition, Sellers have breached their obligations under Section 11.1(a) of the Purchase Agreement to indemnify Buyer for those liabilities it has incurred as a result of Sellers' acts and omissions, including without limitation liabilities associated with Mexico VAT and severance payments to Defendant Coll, as alleged herein.

68.     Buyer has fully performed all terms, covenants and conditions to be performed by it pursuant to the terms of the Purchase Agreement and Earn-Out Agreement, or such performance has been excused.

69.     Due to Sellers' breach, Plaintiffs are entitled to damages in an amount to be proven at trial, including without limitation over $6.5 million that Buyer overpaid to Sellers, as well as the more than $1.5 million in losses Plaintiffs have incurred and for which they are entitled to be indemnified.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendants Sellers)

70.   Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

71.   Under California law, there is implied in every contract a covenant that each party will act in good faith and deal fairly with one another and to do nothing which deprives the other party or parties of the benefits of the contract. Sellers have breached the covenants of good faith and fair dealing implied in the Purchase Agreement and the Earn-Out Agreement.

72.   As alleged above, Sellers failed to timely disclose to Buyer complete and accurate information about Headway's financial performance, both at the time of the Closing and following the Closing, including in connection with the May 2, 2018 Letter Agreement (and the 2017 Earn-Out Statement that is the subject of that Letter Agreement).

73.   By misrepresenting and failing to provide complete and accurate information about the financial condition of the Headway business, both at the Closing and in connection with the May 2, 2018 Letter Agreement, Sellers have denied to Plaintiffs the benefits and protections of the Purchase Agreement and the Earn-Out Agreement, thereby breaching the implied covenant of good faith and fair dealing in each of those agreements.

74.   As a direct and proximate result of Sellers' breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount according to proof at trial, including without limitation over $6.5 million that Plaintiffs overpaid to Sellers.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation against Defendants Sellers)

75.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

76.    In connection with the Purchase Agreement, the Officers, on behalf of Sellers, misrepresented material information relating to Headway's business and operations, expenses and liabilities.

77.    As majority stakeholders and members of the Headway management team, Defendants Kogan and Coll knew that the reports and representations they made to Plaintiffs about Sellers' operating expenses and liabilities were not timely, complete or accurate.

78.    As the Chief Financial Officer for the Headway companies, Defendant Zabaleta also knew that the reports and representations made to Plaintiffs about Sellers' operating expenses and liabilities were not complete or accurate.

79.    Plaintiffs justifiably relied on the information that was presented to them both before and in connection with the Closing. Plaintiffs were unable to discover Defendants Kogan, Coll and Zabaleta's misrepresentations sooner because the Defendants were in control of the information and failed to disclose and/or misrepresented the true facts concerning Headway business finances.

80.    Further, in connection with the May 2, 2018 Letter Agreement and the 2017 Earn-Out Statement that is the subject of that agreement, Plaintiffs justifiably relied on misrepresentations by the Officers, on behalf of Sellers, regarding Headway's operating expenses and liabilities.

81.    As officers and senior management responsible for Headway company operations, Defendants Kogan, Coll and Zabaleta knew that the information, reports and representations made to Plaintiffs about Headway's 2017 financial performance were not complete and accurate.

82.     If Plaintiffs had known the true facts at the time of the Closing and the time Buyer entered into the May2, 2018 Letter Agreement, they would not have overpaid $4 million to Sellers for Headway, nor would they have agreed that Sellers had achieved the financial targets required to receive an earn-out payment for 2017.

83.     As a direct and proximate result of Sellers' misrepresentations, Plaintiffs have suffered damages in an amount to be proven at trial, including without limitation over $6.5 million that Plaintiffs overpaid to Sellers.

84.     As majority stakeholders and members of the Headway management team, Defendants Kogan and Coll knew that the reports and representations made to Buyer of Sellers' operating expenses and liabilities were inaccurate.

85.     As the Chief Financial Officer for the Headway companies, Defendant Zabaleta also knew that the reports and representations made to Buyer of Sellers' operating expenses and liabilities were inaccurate.

86.     Buyer justifiably relied on the information that was presented to it before and in connection with the Closing. Buyer was unable to discover the misrepresentations by Defendants Kogan, Coll and Zabaleta sooner because the Defendants were in control of the information and failed to disclose and/or actively concealed the true facts concerning Headway finances.

87.     Further, in connection with the May 2, 2018 Letter Agreement and the 2017 Earn-Out Statement that is the subject of that agreement, the Officers, on behalf of Sellers, misrepresented Headway's operating expenses and liabilities.

88.     As officers and senior management responsible for Headway company operations, Defendants Kogan, Coll and Zabaleta knew that the reports and representations made to Buyer of Headway's 2017 financial performance were inaccurate.

89.     If Buyer had known the true facts at the time of Closing and/or at the time it entered into the May 2, 2018 Letter Agreement, it would not have overpaid

$4 million to Sellers for Headway, nor would it have agreed that Sellers had achieved the financial targets required to receive an earn-out payment for 2017.

90.    As a direct and proximate result of Sellers' misrepresentations, Buyer has suffered damages in an amount to be proven at trial, including without limitation over $6.5 million that Buyer has overpaid to Sellers.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment against Sellers)

91.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

92.    As alleged above, Sellers improperly received overpayments from Buyer pursuant to the Purchase Agreement and Earn-Out Agreement in an amount to be proven at trial, including without limitation $6.5 million identified herein.

93.    Sellers' improper benefit has directly caused Plaintiffs to suffer monetary loss.

94.    Sellers will be unjustly enriched if they are allowed to retain such funds.

## SIXTH CAUSE OF ACTION
### (Equitable Indemnification)

95.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

96.    As co-CEOs of the Headway Business, Defendants Kogan and Coll are responsible for their own misconduct upon which their labor claims are based (*i.e.*, a failure to properly report their compensation to Argentine authorities).

97.    To the extent Buyer is deemed to bear any liability to Defendants Kogan and Coll on their labor claims, Plaintiffs are entitled to equitable indemnification.

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment against Sellers)

98.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth and realleged herein.

99.    As alleged above, Sellers failed to disclose to Plaintiffs more than $4 million of operating expense liabilities at the Closing, in violation of the Purchase Agreement. As a result, Buyer overpaid Sellers by over $4 million. Sellers confirmed this in an April 12, 2019 Letter Agreement, expressly allowing Buyer to offset $4 million against any payments that Buyer may owe to Sellers.

100.    An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Sellers, on the other hand, regarding their rights and obligations relating to the April 12, 2019 Letter Agreement. In particularly, Plaintiffs contend that Sellers have expressly agreed that Buyer is entitled to recover this overpayment from Sellers, as set forth in the Letter Agreement, dated April 12, 2019.

101.    Defendant Sellers, on the other hand, now disavow that Letter Agreement, contending that it was procured by misrepresentation. As a result, a controversy exists as to whether the Letter Agreement is enforceable and whether Buyer is entitled to recover for the $4 million overpayment of the Headway purchase price.

102.    Further, as alleged above, although unknown to Buyer at the time it entered into the May 2, 2018 Letter Agreement accepting the 2017 Earn-Out Statement, the Headway companies did not actually achieve the financial results required in order for Sellers to receive a 2017 earn-out payment. Adjusted, and as evidenced by Entravision's restatement of its 2017 audited financial statements, Sellers' earn-out goals for 2017 were not achieved and the Earn-Out Payment for 2017 was not actually earned.

103.   An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Sellers, on the other hand, regarding their rights and obligations relating to the May 2, 2018 Letter Agreement. In particular, Plaintiffs contend that Buyer prepared the 2017 Earn-Out Statement and entered into this Letter Agreement both (a) mistaken about material facts related to the 2017 Earn-Out Statement that Sellers knew, should have known or suspected, yet they used that mistake to their advantage; and (b) having been induced into agreeing to the 2017 Earn-Out Statement in the Letter Agreement as a result of Sellers' failure to disclose facts material to the Earn-Out Statement.

104.   Defendant Sellers, on the other hand, contend that the Letter Agreement is final, non-appealable and binding, and that Buyer has waived its rights to challenge the 2017 Earn-Out Statement. As a result, a controversy exists as to whether the Letter Agreement is enforceable, should be rescinded and/or reformed, and whether Sellers were improperly deemed to have qualified for a an earn-out payment for 2017.

105.   Plaintiffs desire a judicial determination of the respective rights, obligations and interests of Plaintiffs and Sellers, and specifically seek a judicial declaration as follows:

a.   that that the Letter Agreement, dated April 12, 2019, is binding and enforceable, and that Buyer is entitled to recover approximately $4 million from Sellers that it overpaid for Headway, in an amount to be proven at trial; and

b.   that the Letter Agreement, dated May 2, 2018, is not enforceable, should be rescinded and/or reformed on grounds of mistake or fraud, and that no earn-out payment was earned by Sellers for the period ending December 31, 2017.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For compensatory damages in an amount to be proven at trial;

2.    For a declaration that the Letter Agreement, dated April 12, 2019, is binding and enforceable, and that Buyer is entitled to recover approximately $4 million from Sellers that it overpaid for Headway, in an amount to be proven at trial;

3.    For a declaration that the Letter Agreement, dated May 2, 2018, is not enforceable, should be rescinded and/or reformed on grounds of mistake or fraud, and that no earn-out payment was earned by Sellers for the period ending December 31, 2017;

4.    For costs of suit to the extent recoverable by law;

5.    For pre-judgment and post-judgment interest; and

6.    For such other and further relief as the Court may deem just and proper.

Dated: January 21, 2020             JONES DAY

                                    THE COOK LAW FIRM, P.C.


                                    By:    /s/ *Brian D. Hershman*
                                           Brian D. Hershman

                                    Attorney for Plaintiffs
                                    ENTRAVISION COMMUNICATIONS
                                    CORPORATION and HEADWAY
                                    SPAIN DIGITAL TECHNOLOGY
                                    SERVICES, S.L.U.

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right, as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: January 21, 2020          JONES DAY

THE COOK LAW FIRM, P.C.


By:   /s/ *Brian D. Hershman*
          Brian D. Hershman

Attorney for Plaintiffs
ENTRAVISION COMMUNICATIONS
CORPORATION and HEADWAY SPAIN
DIGITAL TECHNOLOGY SERVICES,
S.L.U.